## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MONICA JOSEY JAMES, | ) | |
| ARLINDA (TRAY) JOHNS, and | ) | |
| TYRELLE (TY) HINSON | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| MICHAEL COX, | ) | |
| DOMINIQUE MORGAN, | ) | |
| TRAVIS REED MILLER, | ) | |
| TANYA NGUYEN, | ) | |
| DAVID BOOTH(AKA ZEPHYR | ) | |
| WILLIAMS) | ) | |
| | ) | |
| | ) | |
| | ) | COMPLAINT |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

## <u>COMPLAINT</u>

NOW COME MONICA JOSEY JAMES, ARLINDA (TRAY) JOHNS, and TYRELLE (TY) HINSON, hereinafter referred to individually as "Plaintiff James" or "Monica James," "Plaintiff Johns" or "Tray Johns," and "Plaintiff Hinson" or "Ty Hinson," collectively referred to as "Plaintiffs" by and through their counsel, for their complaint, and respectfully show the Honorable Court the following:

1. This is an action for employment discrimination brought to secure relief for harassment, hostile work environment, discrimination and retaliation in violation of the Civil Rights Act of 1870, 42 U.S.C. §1981, as amended ("Section 1981") and other state and federal laws. The jurisdiction of this Court is invoked to secure protection of, and to redress deprivation of, rights

guaranteed by federal law, which law provide for injunctive and compensatory relief for illegal discrimination in employment.[1]

## JURISDICTION & VENUE

2.   This action arises under 42 U.S.C. §1981. Jurisdiction is invoked pursuant to 28 U.S.C. §1331.

3.   This action is also qualified on the parties' diversity of citizenship under 28 U.S.C. §1332(a)(1) because it is between citizens of different states.

4.   The matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

5.   Venue is proper in this District pursuant to 28 U.S. §1391 because the acts or omissions giving rise to this lawsuit occurred in Suffolk County, Massachusetts and in this judicial district.

## PARTIES

6.   Plaintiff Monica James ("Plaintiff James" or "Monica James") is a natural person and an African American citizen who is currently residing in Osceola County, Florida. Plaintiff James is a transgender woman, and a formerly incarcerated person. She began her employment contract with Black & Pink on March 11, 2017. On December 21, 2017, the members of the Voting Leadership Circle sent a letter of termination to Monica James.

7.   Plaintiff Tray (Arlinda) Johns ("Plaintiff Johns" or "Tray Johns") is a natural person and an African American citizen who is currently residing in Orange County, Florida. Plaintiff Johns is a formerly incarcerated person and a Navy Veteran. On August 17, 2017, Tray Johns assumed

---

[1]    Plaintiffs are currently engaged in active litigation against Black & Pink, Jason Lydon, Johannes Wilson, Zahara Green, and Megan Selby in the Northern District of Illinois Eastern Division, Case No. 19 cv 3366. In Case No. 19 cv 3366, the above named defendants were dismissed because of lack of personal jurisdiction. As such, these defendants are being sued in this Court in their individual capacities for their roles in the violation of Plaintiffs' civil rights.

the leadership of Black & Pink as its National Director, and began her employment contract. On or around December 21, 2017, Tray Johns was ousted and terminated from Black & Pink by Defendants and others.

8.   Plaintiff Tyrelle (Ty) Hinson ("Plaintiff Hinson" or "Ty Hinson") is a natural person and an African American citizen who is currently residing in Dekalb County, Georgia. On January 28, 2018, Ty Hinson was fired from his position as the Office Manager of Black & Pink in retaliation for opposing the discriminatory treatment of Plaintiff James and Plaintiff Johns.

9.   On January 19, 2016, Black & Pink filed its Articles of Organization to register itself as a non-profit corporation with the Commonwealth of Massachusetts. Pursuant to its Articles of Organization, "the membership of the corporation shall consist of the members of the board of directors." Black & Pink is a queer anarchist organization. Black & Pink's listed purpose is as follows: "Black & Pink is an open family of LGBTQ prisoners and "free world" allies who support each other through advocacy, education, direct service, and organizing."

10. From August 17, 2017 to October 17, 2017, following individuals were listed as Black & Pink's board of directors with the State of Massachusetts: Nora Berson, Tyrelle Hinson, Jason Lydon, Reed Miller, and Johannes Wilson. (Exhibit 1).

11. Black & Pink is a nonprofit corporation with under 6 employees during the time of events giving rise to this lawsuit, conducting business nationally through chapters covering 9 or more states, including Chicago and Massachusetts.

12. Defendant Michael Cox is an adult citizen of the State of Massachusetts with a last known address at 32 McPhee Road, Framingham, Massachusetts, 01701, and at all relevant times, a member of the Interim Leadership Circle, who exercised supervisory authority over the Plaintiffs at Black & Pink .

13.  Defendant Travis Reed Miller is an adult citizen of the State of Connecticut with a last known address at 789 Elm Street, New Haven, CT 06511 and at all relevant times, a member of the Board of Directors & the Interim Leadership Circle exercising supervisory authority over the Plaintiffs at Black & Pink.

14. Defendant Dominique Morgan is a natural person with a last known address at 3314 N 66th Street, Omaha, NE 68104. At all relevant times, Dominique Morgan was a member of the Interim Leadership Circle, and in or around the end of November 2017, became the National Director of Black & Pink was exercising supervisory authority over the Plaintiffs.

15. Defendant David Booth (AKA Zephyr Williams) is an adult citizen of the State of New Jersey with a last known address at 234 Suydam Avenue, Apt 516, Jersey City, NJ 07304, and at all relevant times was a member of the Interim Leadership Circle that exercised supervisory authority over the Plaintiffs at Black & Pink.

16. Defendant Tanya Nguyen is an adult citizen of the State of New York with a last known address at 550 W 150th Street, Apt 3, New York, NY 10031, and at all relevant times was a member of the Interim Leadership Circle exercising supervisory authority over the Plaintiffs at Black & Pink.

## FACTS

17. Upon information and belief, Jason Lydon started doing business as Black & Pink in 2007 after he was released from prison.

18. At all relevant times, Black & Pink operated chapters nationally, including in Chicago, Illinois and Boston, Massachusetts.

19. The stated mission of Black & Pink is "to abolish the criminal punishment system and to liberate LGBTQIA2S+ people/people living with HIV who are affected by that system, through advocacy, support, and organizing."

20. As alleged below, Black & Pink failed to live up to its mission because it knowingly allowed its Interim Leadership Circle (collectively referred to as the "Leadership Circle") consisting of Michael Cox, Travis Reed Miller, David Booth (Zephyr Williams), Tanya Nguyen, Dominique Morgan, and others to harass, threaten, target, and retaliate against all the African American employees.

21. This Leadership Circle, under the supervision of Jason Lydon and Johannes Wilson, directly participated in subjecting the Plaintiffs, a formerly incarcerated African American gay woman, a formerly incarcerated African American transgender woman, and an African American gay man to a discriminatory and hostile work environment, and subsequently retaliating against them for opposing such racially discriminatory actions.

22. In late 2015 and the early part of 2016, Jason Lydon and Johannes Wilson created a scheme of a shadow management structure called the Leadership Circle at Black & Pink.

23. Jason Lydon and Black & Pink made false representations to Monica James and Tray Johns that the organization was undertaking a transition of leadership from the hands of a white gay man to African American formerly incarcerated people in an effort to allow the people most impacted by the criminal justice system the ability to advocate for changes to the system.

24. Jason Lydon informed Tray Johns that upon assuming the position as National Director, he and the existing board members would step down from the organization and that members of the Leadership Circle who are reflective of the communities being served would become the new board of Black & Pink.

25. Jason Lydon and Black & Pink represented to Tray Johns and Monica James that they have raised sufficient funds to cover the salary of the 3 staff members for 5-6 months, and that upon taking his position, it was expected that they would raise their own funds to cover their salaries and other costs associated with operating the organization's activities.

26. Michael Cox, Travis Reed Miller, David Booth (Zephyr Williams), Dominique Morgan, Tanya Nguyen, Katie Omberg, Jason Lydon, Johannes Wilson, Zahara Green, Megan Selby, and Black & Pink, collectively, knew that the above stated representations were false and there was no actual "transition of leadership" because they had participated in creating an elaborate scheme to create shadow management structures in the form of Leadership Circle and make false representations on the Massachusetts Articles of Organization regarding the identity of the board members of B&P. This is further evidenced by the letter sent to Tray Johns on November 17, 2017 from the leadership circle which states, "as discussed at previous leadership circle meetings this year, the board that is specified in the articles of incorporation is for state documentation purposes only. It delegates decision making power and authority to the full Leadership Circle." (Exhibit 2, pg 1; Exhibit 3, pg 13)

27. On December 1, 2016, Jason Lydon posted a job-opening for a full-time National Organizer position at Black & Pink.

28. Plaintiff James applied for the full-time National Organizer position at Black & Pink, and subsequently was called for an interview. The job posting specifically stated that "Please keep in mind that we only hire formerly incarcerated people to be staff. We are open to helping someone relocate to Boston and individuals who have experience organizing and doing remote work in the past could potential work remote."

29. During the interview for the position of the National Organizer, Jason Lydon told Plaintiff James, that Black & Pink, has historically been a white-led organization with a white volunteer base, and had initiated a "transition of leadership" to POC ("People of Color") formerly incarcerated people who were most impacted by the criminal justice system.

30. On March 11, 2017, Monica James was hired by Black & Pink to work remotely from Chicago as its full-time National Organizer. She was further told that she would also be serving as a non-voting board member.

31. Within a few days of hiring Plaintiff James, Jason Lydon changed the terms of her employment agreement and told her that in order to be considered a full-time employee, she would have to move to Boston, MA.

32. On June 1, 2017, Plaintiff James left her hometown of Chicago, IL and moved to Boston, MA to assume her position as the National Organizer of Black & Pink on a full-time basis.

33. Around the last week of June 2017, Monica James engaged in a brief dating relationship with Frank Place, a white member of Black & Pink.

34. On or around July 7, 2017, Frank Place told Plaintiff James that he was placed on a sex offender registry because he had sexual relations with a minor, and that his only regret were the consequences. Soon thereafter, unbeknownst to her and without her consent, he began recording her while she was performing a sex act on him. Plaintiff James, upset at discovering Frank Place recording her, stopped the act and demanded that he delete any recordings/pictures of her. Further, she told him that she would report him to the police if he ever engaged in similar acts again.

35. On or about July 27, 2017, Jason Lydon, Plaintiff James' then supervisor confronted her and demanded to know why Frank Place was "not happy" with her.

36. Plaintiff James reported to Jason Lydon that Frank Place had started recording her during a sex encounter without her permission or consent.

37. On or about July 28, 2017, Jason Lydon, the then National Director of Black & Pink and Plaintiff James' then immediate supervisor threatened her job and job-safety and told her that "if she wanted to keep her job, she should find a way to apologize to Frank Place." He further threatened her safety by warning her against going to the police. This action was racially discriminatory because Jason Lydon told Plaintiff James that in order for her to have a job, she would have to ensure that Frank Place, a white man was happy with her.

38. In July 2017, Jason Lydon, in the presence of Monica James and Tyrelle Hinson, while offering the National Director position to Plaintiff Tray Johns told her that once she officially assumed the position of National Director, he and the existing board members would step down from the organization and a new board would step-in that would be reflective and represent the communities being served, because the existing board was majority white and consisted of people who had no experience with incarceration.

39. Black & Pink purposely hired Plaintiff Johns and Plaintiff James in a hostile work environment that was created for and dominated by white members of Black & Pink who wanted to subjugate, control, and use the two black women, and through them, the larger Black community rather than follow their leadership. Prior to handing the leadership of the organization to them, Jason Lydon, the board and the members of Black & Pink had created a shadow parallel management structure in the form of the Leadership Circle whereby the identity of the board of directors disclosed to the State of Massachusetts were for documentation purposes only, and the true decision-making power rested in an amorphous group of undisclosed currently and formerly incarcerated people. (Exhibit 2)

40. In the first week of August 2017, Jason Lydon had a conversation about Plaintiff James with the newly hired Plaintiff Johns. Jason Lydon told Plaintiff Johns that she "needed to watch out for Monica James, she is going to be difficult to manage, she did some shady shit to one of our members but I don't want to be the white man to fire a black trans woman."

41. Plaintiff Johns refused to go along with Jason Lydon's instruction and did not fire Monica James.

42. Jason Lydon, a white man's intentional act of targeting and attempting to use Plaintiff Johns, an African American person, to fire Plaintiff James, another African American person, was racially hostile to both James and Johns.

43. On or around August 17, 2017, Jason Lydon began spreading incomplete/misinformation regarding Plaintiff James' personal affairs to incite violence and hostility against her.

44. Jason Lydon told Tyrelle Hinson that "Monica was going to report Frank to the police because she is mad at him for breaking up with her."  In response, Tyrelle Hinson became angry with Plaintiff James, threatened to "whoop" her ass, and told her that he won't work with her and for the next couple days, he worked from the downtown office.

45. Plaintiff Johns, who had just started her position as a National Director had to convene an emergency meeting with the in order to dissolve the hostility between her staff members that she saw as being disruptive to the work.

46. In August 2017, at the direction of Jason Lydon and Johannes Wilson, Michael Cox took Plaintiff Johns and her wife Nina Manning for dinner to convince Plaintiff Johns to fire Plaintiff James, not on the account of her job performance but rather because she spoke out that she had been sexually violated by a white male member of Black & Pink.

47. On or around early September 2017, Johannes Wilson instructed Michael Cox to find a way to record conversations with Plaintiff James.

48. At the direction of Johannes Wilson, and based on racial stereotyping of African American women, Michael Cox, who had never met Plaintiff James, started to characterize her as an "aggressive" black woman. (Exhibit 4)

49. The characterization of Plaintiff James as "aggressive" by Michael Cox and Johannes Wilson, and their demand that in order to interact with her, she would have to agree to be recorded was not only insulting but demeaning and reeked of racial stereotyping. Accordingly, these statements and actions were racially discriminatory.

50. In September/October 2017, Michael Cox showed up unannounced at Plaintiffs' workplace. Plaintiff James and Michael Cox had a meeting over coffee in hopes of reconciling any differences to no avail.

51. At the above-mentioned coffee meeting, Michael Cox told Plaintiff James that he would not forgive her for stating that she would report Frank Place to the police for the harm he had inflicted on her and that he would not rest until she was dealt with and fired. He then told her that he missed "the old days." He then asked her to meet him outside and fight it out.

52. Michael Cox's remarks were racist, insulting and humiliating to Plaintiff James.

53. Monica James complained about Michael Cox to the board of directors, leadership circle, and her immediate supervisor Tray Johns. (Exhibit 4)

54. By September 26, 2017, the in-fighting and harassment, racism and hostility against Plaintiff James was so evident that Robert Suttle, one of the Leadership Circle members, initiated resignation from the interim leadership circle and stated, "I appreciate this transparency, but I didn't sign up for this. Its clear to me that those that are so-called invested in the organization are purposely going outside of the scope of their roles to carry on being in conflict with national staffer's. I don't think this will be the last matter as these relationships or conflicts run deep. I'm

really disappointed that one of the LC Members is now infighting with a staff member. Unbelievable. Having said that I'm giving notice that I'm rethinking my commitment to the Black & Pink interim leadership circle. I'll give my final decision by COB Friday September 29, 2017." (Exhibit 4, Pg. 3)

55. In early August 2017, David Booth and Dominique Morgan, as the members of the Leadership Circle, initiated an investigation into Plaintiff James' complaint against Michael Cox.

56. On October 18, 2017, as a resolution to their investigation into the actions of Michael Cox, Dominique Morgan and David Booth, on behalf of the Leadership Circle demanded that Plaintiff James must agree to not contact Frank Place, not initiate any legal proceedings, and made these conditions part of her organizational responsibilities at Black & Pink.  (Exhibit 5, Pg. 4, para 3)

57. The Leadership Circle's action of demanding Plaintiff James to agree to a "no contact email" with Frank Place is racially discriminatory because it punishes an African American transgender woman for daring to speak against the misconduct committed by a white man. Further, instead of addressing her allegations of misconduct, the Leadership Circle attempted to intimidate her to avoid the legal system to protect her interests, and attempted to paint her as the aggressor rather than the victim.

58. On September 4, 2017, Plaintiff Johns challenged the odd and conflicting management structure of Black & Pink, whereby Jason Lydon, Johannes Wilson, Nora Berson, Reed Miller, and Tyrelle Hinson were registered as the board of directors of Black & Pink with the State of Massachusetts, but they were not acting as a board of directors. Instead, the Leadership Circle claimed to be the ultimate decision-maker at Black & Pink. Plaintiff Johns demanded that this discrepancy must be addressed, and that people who are actually acting as the board of directors, should be registered as the board with the State authorities.

59. From September 4, 2017, at the direction of Jason Lydon and Johannes Wilson, the specific members of the Leadership Circle consisting of Reed Miller, Dominique Morgan, Michael Cox, Tanya Nguyen, and Zahara Green started resisting Plaintiff Johns' attempts to bring Black & Pink under legal compliance. (Exhibit 2)

60. Since September 2017 to around November 20, 2017, at the direction of Jason Lydon, the then listed board of directors and the Leadership Circle consisting of: Zahara Green, Johannes Wilson, Dominique Morgan, Michael Cox, Travis Reed Miller, David Booth, and Tanya Nguyen began hindering and opposing Plaintiff Johns' efforts to bring Black & Pink under legal compliance and told her that the existing board has delegated its powers to the Leadership Circle and so there was no need to report any changes to the State of Massachusetts, and that such a shadow parallel management structure was envisioned and planned in preparation for transition of leadership. (Exhibit 2, 6, 7, 8)

61. The Leadership Circle rejected Plaintiff Johns' demand to bring the organization into compliance and fulfill the terms of her hiring by registering the Leadership Circle as the new board of Black & Pink and completing the transition of leadership from Jason Lydon to Plaintiff Johns.

62. Instead, at the direction of Jason Lydon and Johannes Wilson, the Leadership Circle stalled her efforts, and attempted to convince her to go along with the dubious shadow management structure by presenting Plaintiff Johns with internal documents that severely curtailed her powers as National Director, and allowed for the existence of two parallel management structures in the form of a board that is listed with the state and an undisclosed group of people called the Leadership Circle to be the ultimate decision-making power. (Exhibit 2)

63.  Further, as the National Director, Plaintiff Johns became responsible for the actions taken by the Leadership Circle and other members, who were not listed on any documents, did not report to her or have any direct managerial control over. (Exhibit 9)

64. Even though Jason Lydon had officially resigned from Black & Pink on August 17, 2017 and handed the leadership of the organization to Plaintiff Johns, he continued to direct the actions of the Leadership Circle and affairs at Black & Pink through his partner Johannes Wilson, who was also a board member and a member of the Leadership Circle. (Exhibit 2)

65. Jason Lydon continued to retain power over the Black & Pink bank account even after his resignation from the organization.

66. Jason Lydon continued to assert control over the phone accounts of Black & Pink making it unreasonably difficult for Plaintiff Johns to conduct day to day affairs of the organization.

67. Jason Lydon remained listed as the National Director for three months after his resignation.

68. At the direction of Jason Lydon and Johannes Wilson, Michael Cox with the assistance of the other members of the Leadership Circle, specifically Dominique Morgan, David Booth, Travis Reed Miller, Tanya Nguyen, and Zahara Green intentionally created a hostile and an impossible working environment for Plaintiff Johns and Plaintiff James. In addition to other discriminatory actions, Michael Cox  directed and worked in concert with the majority white volunteers from the Black & Pink Boston Chapter and stopped providing any assistance to the Plaintiffs. (Exhibit 10)

69. On October 31, 2017, Plaintiff James left Boston, MA and moved to Providence, RI.

70. The Leadership Circle also created an impossible working environment for Plaintiff Johns because they held control of all the passwords to the social media sites, bank accounts, email

accounts, pen-pal database, and newspaper accounts, making it impossible for Plaintiff Johns to maintain any oversight of the actions taken by various volunteers from all over the country.

71. On or around November 17, 2017, Plaintiff Johns discovered that Jason Lydon was still on the bank account of Black & Pink. On a phone call, Johns informed the Leadership Circle that she was alarmed that Lydon was still on Black & Pink's bank account and that he shouldn't be. The Leadership Circle bruised off Johns' concerns and told her that "it's alright, it's just Jason."

72. On November 17, 2017, immediately after the phone call with Plaintiff Johns, Travis Reed Miller, in concert with Jason Lydon, Johannes Wilson, Michael Cox, David Booth, Tanya Nguyen, Dominique Morgan, and Zahara Green gained access to Plaintiff John's computer, obtained log-in credentials for the organization, changed her email password restricting her ability to gain access to her Black & Pink email account, all social media accounts, and took control of the organization by instituting themselves as the new board of directors.

73. Further, upon accessing Plaintiff John's computer and getting into her email account, Defendants Travis Reed Miller, Michael Cox, Tanya Nguyen, David Booth (Zephyr Williams), and Dominique Morgan contacted various vendors to cancel the contracts that Plaintiff Johns had entered into on behalf of Black & Pink, and falsely claimed that such transactions were fraudulent and unauthorized.

74. At this point, sensing a hostile takeover of Black & Pink by Jason Lydon, Johannes Wilson, Michael Cox, Travis Reed Miller, David Booth, Tanya Nguyen, Dominique Morgan and Zahara Green, Plaintiff Johns, as the then National Director and the responsible party for the organization, secured the donated funds by going to the bank and converting $50,000 in liquid funds to a Treasurer's check in the name of Black & Pink, and informed Black & Pink's bookkeeper Cathy Jacobowitz by sending her a copy of the cashier's check.

75. Cathy Jacobowitz, Black & Pink's bookkeeper, advised Plaintiff Johns that she should open a new bank account in the same bank and deposit the cashier's check in that account while she regained control of the organization and instituted a legal board for Black & Pink.

76. On or around November 18, 2017, Jason Lydon, who still possessed full control and power over Black & Pink's bank account, traveled from Chicago, Illinois to Boston, Massachusetts and personally visited the Eastern Bank, along with Michael Cox, and removed Tray Johns as the authorized party on the bank account. At that point, realizing that she was no longer considered the responsible party for Black & Pink, Plaintiff Johns went to the bank and deposited any checks that were in her possession and safekeeping.

77. On November 22, 2017, Plaintiff James filed for a harassment prevention order against Frank Place, Michael Cox, Reed Miller, and Katie Omberg with the Boston Municipal Court complaining about the harassment and discriminatory environment at Black & Pink that made her feel unsafe and hunted down by a group of white people. Plaintiff Johns signed as a witness to Plaintiff James' request for a harassment prevention order. (Exhibit 11)

78. On December 21, 2017, Defendant Dominique Morgan sent an email to Plaintiff John's terminating her employment with Black & Pink.

79. On December 21, 2017, Defendant Dominique Morgan sent an email to Plaintiff James terminating her employment with Black & Pink.

80. Plaintiff James repeatedly opposed the culture of white supremacy and race based discriminatory practices she experienced at Black & Pink at the hands of Michael Cox, Jason Lydon, Dominique Morgan, Travis Reed Miller, Tanya Nguyen, David Booth, Zahara Green, and Johannes Wilson. (Exhibit 12, 13, 14).

81. In October 2017, Plaintiff Johns had a lunch meeting with Dominique Morgan in Washington, DC during which she openly opposed the racial targeting, stereotyping, and harassment of Monica James at Black & Pink. Johns informed Morgan that Jason Lydon, Michael Cox, Frank Place, Johannes Wilson, Travis Reed Miller, and the other white/non-black people at Black & Pink were racist and were after Monica James because she spoke out against their white boy Frank Place, and that she needed help in protecting her from the white people.

82. Since September 2017, Plaintiff Johns opposed the racially discriminatory scheme of the sham transition of leadership from a white man to a black woman, whereby it appears to public/funders that Black & Pink is led by Johns, a black woman, when in actuality, it is controlled by Jason Lydon and the group of people he has installed in the form of the Leadership Circle consisting of Michael Cox, David Booth, Travis Reed Miller, Dominique Morgan, Tanya Nguyen, Johannes Wilson, and Zahara Green. (Exhibit 2, 6, 7, 8, 9)

83. Defendants Michael Cox, Travis Reed Miller, David Booth, Tanya Nguyen, and Dominique Morgan engaged in unlawful retaliation when they terminated Plaintiff Johns because: (i) she refused to fire Plaintiff James; (ii) opposed the targeting and racially hostile treatment of Plaintiff James by calling out the pattern of white supremacist practices of Michael Cox, Johannes Wilson, Travis Reed Miller, David Booth, Jason Lydon, Black & Pink Boston Chapter, and Black & Pink whereby in order to protect Frank Place, a white man, all of above mentioned people ganged up against Plaintiff James, a black woman to attempt to intimidate her, discredit her, force into silence, and cancel her ; (iii) she signed as a witness to Plaintiff James' petition for harassment prevention order, and (iv) opposed the racially discriminatory treatment she herself was subjected to through the racially hostile scheme of the sham transition of leadership whereby (i) the board of directors that were disclosed to the State of Massachusetts were for

"documentation" purposes only and that they had delegated their authority to an amorphous group of undisclosed people from across the Country;  and (ii) it appeared to the public/funders that Jason Lydon, a white man/founder of Black & Pink had transitioned out and given the leadership of Black & Pink to a black woman, when in actuality, Black & Pink continued being controlled by Jason Lydon, through the group of people he had installed in the form of Leadership Circle: Michael Cox, David Booth, Travis Reed Miller, Dominique Morgan, Tanya Nguyen, Johannes Wilson, and Zahara Green.

84. By November 20, 2017, Dominique Morgan had begun the creation of a marketing plan to rehabilitate Black & Pink's image in the court of public opinion. This marketing plan included attempts at creation of self-serving, misleading, and false written trail, and publicly pushing out false and incendiary narratives about Plaintiff Johns and James to a large number of people/organizations including jails and prisons across the Country. (Exhibit 15, pg 3)

85. Plaintiff James' last paycheck was withheld and never disbursed to her account.

86. In addition to the termination of employment of Plaintiffs Johns and James, and usurpation of power from Plaintiff Johns, Defendants further retaliated against both the Plaintiffs by publishing a false and defamatory letter to a large number of people.

87. On January 1, 2018, upon information and belief, Jason Lydon directed Johannes Wilson, Michael Cox, David Booth, Travis Reed Miller, Dominique Morgan, Zahara Green, and Tanya Nguyen to circulate a 14 page defamatory letter to Black & Pink's listserv, various funders, and non-profit organizations across the country including the following third parties: Transformative Justice Law Project of Illinois, The City School, GLAAD, LGBTQ National Working Group, National Council for Incarcerated & Formerly Incarcerated Women & Girls, Elton John

Foundation, and Astrea Foundation with a subject line titled "Reflections on the 2017 Black and Pink Leadership Transition Process." (Exhibit 3)

88. The January 1, 2018 letter contained false and defamatory statements that Jason Lydon, Johannes Wilson, and Black & Pink knew to be untrue, and which were made with the intent to injure, disgrace, and defame Plaintiffs, to bring Plaintiffs into discredit, and to cause the readers of the letter to hold Plaintiffs in contempt.

89. Further, by January 2018, the Leadership Circle had terminated all African American employees at Black & Pink. Such a practice demonstrates racial discrimination.

90. On April 8, 2018, Defendant Michael Cox continued his campaign of harassment and retaliation and published an incendiary and defamatory article of and concerning Plaintiff James and Plaintiff Johns on the website "Medium." (Exhibit 16)

91. On September 1, 2018, Defendant Michael Cox, using the alias Chris Cummings published another article on the website medium further Plaintiff James further maligning her reputation. (Exhibit 17)

### Tyrelle Hinson

92. Plaintiff Hinson was associated with Black & Pink in a volunteer capacity since 2008.

93. In early 2016, Jason Lydon hired Plaintiff Hinson as the office manager of Black & Pink. During the time of his hiring, Jason Lydon informed Plaintiff Hinson that in the coming months, he is going to step away from Black & Pink and transfer the leadership of Black & Pink to all Black/African American people.

94. In January 2016, without the knowledge and consent of Plaintiff Hinson, Jason Lydon listed Ty Hinson as the board secretary of Black and Pink. (Exhibit 1).

95. Around the second week of August 2017, Jason Lydon, in an effort to incite Plaintiff Hinson against Monica James, had a conversation with him in the Boston National Office, and  told him that Monica "ain't right for us. She threatened to call Frankie's probation officer on him and she don't hold our values."

96. Around the last week of August 2017, Plaintiff Hinson was present in a meeting with Jason Lydon, Johannes Wilson, Reed Miller, and other members. Jason Lydon suggested that Monica James should be fired for having an intimate relationship with Frank Place. Plaintiff Hinson opposed Jason Lydon's suggestion by reminding the meeting participants that Jason Lydon and Johannes Wilson were a romantic couple too, and so were many others, but they were not fired, and that "y'all ain't talking about this white man recording Monica during sex. This ain't cool to have different standards for black and white people. Y'all gotta get it together."

97. In September 2017, Plaintiff Johns informed Plaintiff Hinson that he was listed as the board secretary, and was one of the voting members of Black & Pink. Until that time, Plaintiff Hinson was not aware of his position and had not consented to be listed as such, and nor did he knowingly engage in governance and decision making of Black & Pink.

98. In September 2017, Plaintiff Hinson gave Plaintiff Johns his consent to actually serve as the board secretary of Black & Pink.

99. On or around December 2017, Reed Miller called Plaintiff Hinson to notify him that Plaintiff Johns had been fired. Reed Miller said that Plaintiff Johns shouldn't have touched the articles of incorporation. Plaintiff Hinson replied by asserting Jason Lydon handed the organization to Plaintiff Johns and that Black & Pink was now led by Black/African American people. He further stated, "y'all are on some racist ass shit. You fired Tray for doing her job and y'all be

treating Monica differently since the Frankie incident. The entire boston chapter did a white

flight on us. Y'all are wrong for this."

100.      Around the third week of December 2017, Plaintiff Hinson had another phone

conversation with Reed Miller discussing the firing of Plaintiff James. In this conversation,

Plaintiff Hinson opposed Black & Pink's decision to terminate the employment of Plaintiff

James and Plaintiff Johns and told Reed Miller that "they were on some racist ass white boy shit"

and that Plaintiff James was being penalized because "Frankie recorded Monica during sex and

that ain't right. You are simply mad because a black woman dared to call cops on your white

boy. So what if Monica threatened to call the police on him? Y'all did the same thing to me. You

sent me a text saying you will call police on me for amending the articles of incorporation. How

is it that when you do it, it is ok but when we do it, you say it's wrong." He further objected by

stating, "Who made the decision to fire MJ and Tray. I am the board secretary of Black & Pink

and no one asked me."

101.      On or around December 31, 2017 or January 7, 2018, as part of his job duties, Plaintiff

Hinson was present at a Sunday volunteer meeting. At this meeting, Michael Cox, Julia

Blencowe, and other Black & Pink members approached him and asked him whether he agreed

with the firing of Plaintiff Johns and Plaintiff James. Plaintiff Hinson informed them that he does

not support their firing and believes that they were treated in a racist and discriminatory fashion.

102.      In the last week of December 2017/first week of January 2018, Plaintiff Hinson had a

phone conversation with Jason Lydon and Johannes Wilson. In this phone conversation, Jason

Lydon asked Plaintiff Hinson as to his thoughts about the firing of Plaintiff Johns and Plaintiff

James. Plaintiff Hinson informed him that he does not think that "was right" and believes they

have been wrongfully treated. Jason Lydon further explained that Plaintiff James was fired for

having intimate relations with a volunteer and that was against the policy of Black & Pink.

Plaintiff Hinson confronted Jason Lydon by responding that there is no such policy in existence

and that he is randomly making such policies to penalize a black woman and that "y'all been

harrassing Monica since August cause y'all mad that she said no to Frankie."

103.    On January 28, 2021, Plaintiff Hinson received an email from Dominique Morgan stating

he was terminated from Black & Pink.

104.    Plaintiff Hinson's last pay was withheld and never disbursed to his account.

## CAUSES OF ACTION

105.    The foregoing allegations 1- 104 are hereby incorporated into each of the counts below.

### Count 1 - 42 U.S.C. §1981 - Hostile Work Environment
### (Monica James v. Michael Cox, David Booth (Zephyr Williams),
### Tanya Nguyen, Travis Reed Miller, and Dominique Morgan)

106.    Defendants Michael Cox, David Booth, Tanya Nguyen, Travis Reed Miller, and

Dominique Morgan violated §1981 personally and directly participated in creating a hostile work

environment for Plaintiff James because she was African American and she spoke out against the

sexual misconduct committed by a white member of Black & Pink. The hostile work environment,

included but was not limited to: (i) all the Defendants joining Jason Lydon and Michael Cox as

they threatened Plaintiff James' job and safety for defending herself against sexual misconduct

committed by a white member of Black & Pink, and made her personal affairs a topic of workplace

discussion for many months, (ii) Jason Lydon induced Plaintiff James' coworker Tyrelle Hinson

to threaten her safety and refuse to work with her, (iii) Jason Lydon, acting through Johannes

Wilson, instructed Defendant Michael Cox to find a way to record Plaintiff James while having

any interaction with her, and to begin characterizing her as "aggressive," (iv) Michael Cox

pressuring Plaintiff James' immediate supervisor Plaintiff Johns to fire her, (v) Michael Cox, one

of the members of Leadership Circle at Black & Pink using racially derogatory language and inviting Plaintiff James to fight him, (vi) the Leadership Circle consisting of Defendant Michael Cox, Defendant David Booth, Defendant Travis Reed Miller, Defendant Tanya Nguyen, Defendant Dominique Morgan, Johannes Wilson, and Zahara Green which was acting as the ultimate decision-maker and supervisory body conducted a sham investigation regarding Plaintiff James' complaint of racially discriminatory treatment and harassment by Defendant Michael Cox; (viii) the Leadership Circle consisting of Defendant Michael Cox, Defendant David Booth, Defendant Travis Reed Miller, Defendant Tanya Nguyen, Defendant Dominique Morgan, Johannes Wilson, and Zahara Green which was acting as the ultimate decision-maker and supervisory body refused to conduct any investigation regarding the alleged sexual misconduct by Frank Place, and instead made repeated attempts to protect him by silencing Plaintiff James and (viii) ultimately, retaliating against Plaintiff James by sending a false and defamatory letter to a large audience.

107.     Defendant Michael Cox, Defendant David Booth, Defendant Travis Reed Miller, Defendant Tanya Nguyen, and Defendant Dominique Morgan's conduct was objectively unreasonable as no reasonable person would expect their workplace to engage in the conduct described above.

108.     The work environment was subjectively hostile to Plaintiff James, who made repeated complaints to her then-supervisor Jason Lydon, then to Plaintiff Johns when she became her supervisor, and to the Leadership Circle consisting of all the Defendants who was acting as the Board and ultimate decision-maker at Black & Pink, and ultimately as a last resort, sought harassment prevention order from the Massachusetts Trial Court.

109.     Plaintiff James was subjected to a hostile work environment because she is an African American transgender woman and she spoke out against the racially discriminatory culture and practice at Black & Pink, and defended herself against the sexual misconduct committed by Frank Place, a white member of Black & Pink.

110.     The hostile work environment was severe and pervasive because it started from July 2017 and continued well past the termination of Plaintiff James' employment when Defendants, led by Dominique Morgan and Jason Lydon started circulating defamatory letters to an undue large audience. The harassment was severe enough that Plaintiff James experienced fear for her safety and well-being in coming to work, was forced to move from Boston, MA and find housing in Providence, RI after being targeted and bullied at her work-place and on social media by Michael Cox and Black & Pink.

111.     Jason Lydon, who had resigned as the National Director but still retained control over the organization for 3 months after his resignation, and Johannes Wilson, who was an active board member & the member of the Leadership Circle, caused and directed the other members of Leadership Circle consisting of Defendants Michael Cox, David Booth, Travis Reed Miller, Tanya Nguyen, and Dominique Morgan to harass Plaintiff James and get her fired.

112.     As a proximate result of Defendant Michael Cox, David Booth, Travis Reed Miller, Tanya Nguyen, and Dominique Morgan's intentional interference with Plaintiff James' federally protected rights, Plaintiff James suffered depression, anxiety, emotional distress, damage to her reputation, loss of income, and loss of enjoyment of the ordinary pleasures of life.

113.     As a proximate result of Defendant Michael Cox, David Booth, Travis Reed Miller, Tanya Nguyen, and Dominique Morgan illegal indifference to Plaintiff James' federally protected rights,

Plaintiff James suffered depression, anxiety, emotional distress, damage to her reputation, loss of income, and loss of enjoyment of the ordinary pleasures of life.

114.     WHEREFORE, Plaintiff James, by counsel, respectfully prays that this Court provide the following legal remedies:

    a.   Award Plaintiff James lost wages, including back pay, front pay, and lost fringe benefits, including, without limitation, any lost benefits with applicable prejudgment and statutory interest;

    b.   Enjoin Defendants from discriminating against African American workers by allowing members/leadership to create a hostile work environment;

    c.   Award Plaintiffs the costs of litigation, including reasonable attorney's fees, expert fees and expenses;

    d.   Award compensatory damages;

    e.   Award punitive damages; and

    f.   Award any other relief that this Court deems just.

    g.   Plaintiff James demands a trial by jury.

### Count 2 - 42 U.S.C. §1981 - Hostile Work Environment
### (Arlinda(Tray) Johns v. Michael Cox, David Booth (Zephyr Williams), Tanya Nguyen, Travis Reed Miller, and Dominique Morgan)

115.     Defendants Michael Cox, David Booth, Tanya Nguyen, Travis Reed Miller, and Dominique Morgan violated §1981 by personally and directly participating in creating a hostile work environment for Plaintiff Johns because she was African American and she spoke out against the racially and legally offensive organizational structure of Black & Pink, racial targeting and discriminatory treatment of Monica James by the Defendants and Black & Pink. The hostile work environment, included but was not limited to: (i) Repeated attempts by white men - Jason Lydon

and Michael Cox to use her, a black woman to inflict harm on another black person - Monica James by pressuring her to fire James; (ii) Defendants Michael Cox, Travis Reed Miller, David Booth, Tanya Nguyen, and Dominique Morgan, working in concert with Jason Lydon, Johannes Wilson and Zahara Green in implementing a sham transition of leadership from a Jason Lydon to Plaintiff Johns, whereby it appears to the public as if Plaintiff Johns is the new leadership of Black & Pink, when in actuality, the organization was still controlled by Jason Lydon who was operating through the Defendants who he had installed prior to publicly departing from the organization; (iii) Defendants Michael Cox, Travis Reed Miller, David Booth, Tanya Nguyen, and Dominique Morgan, who acted in concert with Jason Lydon, Johannes Wilson, and Zahara Green to create and implement a shadow management structure whereby the board of directors disclosed to the State of Massachusetts was for documentation purposes only and that this board of directors had delegated all of their power and authority to an amorphous group of undisclosed individuals consisting of formerly/current; (iv) Defendants Michael Cox, Travis Reed Miller, David Booth, Tanay Nguyen, and Dominique Morgan, working with Johannes Wilson and Zahara Green, and following the directions of Jason Lydon, repeatedly hindered and resisted Plaintiff John's attempts to bring Black & Pink under legal compliance, and attempted to convince her to continue the pattern of making false statements to the State of Massachusetts by intentionally not disclosing the true identities of the board of directors of Black & Pink; (v) ultimately, retaliating against Plaintiff Johns by sending a false and defamatory letter concerning to a large audience.

116.     Defendants Michael Cox, David Booth, Travis Reed Miller, Tanya Nguyen, and Dominique Morgan's conduct was objectively unreasonable as no reasonable person would expect their workplace to engage in the conduct described above.

117.    The work environment was subjectively hostile to Plaintiff Johns, who made repeated complaints to the Defendants and others about the intentional design of the shadow management structure whereby the actual power and decision making authority was in the hands of an amorphous group of undisclosed formerly/currently incarcerated people, and that the Board of Directors listed with the State of Massachusetts was for documentation purposes only.

118.    Plaintiff Johns was subjected to a hostile work environment because she is an African American woman and she spoke out against the racially discriminatory culture and practice at Black & Pink, and defended Plaintiff James from the racial targeting and harassment inflicted by the Defendants for speaking out against the acts of sexual misconduct committed by Frank Place, a white member of Black & Pink.

119.    The hostile work environment was severe and pervasive because it started from July 2017 and continued well past the termination of Plaintiff Johns' employment when Defendants, led by Dominique Morgan, Michael Cox, and Jason Lydon, began circulating a 14-page letter containing false/defamatory content, and personally sensitive information  to an unduly large audience.

120.    Jason Lydon, who had resigned as the National Director but still retained control over the organization for 3 months after his resignation, and Johannes Wilson, who was an active board member & the member of the Leadership Circle, caused and directed the other members of Leadership Circle consisting of Defendants Michael Cox, David Booth, Travis Reed Miller, Tanya Nguyen, and Dominique Morgan to hinder Plaintiff Johns in the performance of her duties and ultimately fired her.

121.    As a proximate result of Defendants Michael Cox, David Booth, Travis Reed Miller, Tanya Nguyen, and Dominique Morgan's intentional interference with Plaintiff Johns' federally

protected rights, Plaintiff Johns suffered depression, anxiety, emotional distress, damage to her reputation, loss of income, and loss of enjoyment of the ordinary pleasures of life.

122.     WHEREFORE, Plaintiff Johns, by counsel, respectfully prays that this Court provide the following legal remedies:

      a.  Award Plaintiff Johns lost wages, including back pay, front pay, and lost fringe benefits, including, without limitation, any lost benefits with applicable prejudgment and statutory interest;

      b.  Enjoin Defendants from discriminating against African American workers by allowing members/leadership to create a hostile work environment;

      c.  Award Plaintiffs the costs of litigation, including reasonable attorney's fees, expert fees and expenses;

      d.  Award compensatory damages;

      e.  Award punitive damages; and

      f.  Award any other relief that this Court deems just.

      g.  Plaintiff Johns demands a trial by jury.

**Count 3 - 42 U.S.C. §1981 - Retaliation)**
**(Monica James v. Michael Cox, David Booth,**
**Tanya Nguyen, Travis Reed Miller, and Dominique Morgan)**

123.     Defendants Michael Cox, David Booth, Travis Reed Miller, Tanya Nguyen, and Dominique Morgan's have violated §1981 by directly participating in subjecting Plaintiff James to retaliation for her protected opposition to the racially discriminatory treatment she suffered at the hands of Michael Cox, Jason Lydon, Johannes Wilson, the Leadership Circle, and Black & Pink by terminating her employment with Black & Pink.

124.     As a direct and proximate result of Defendants Michael Cox, David Booth, Travis Reed Miller, Tanya Nguyen, and Dominique Morgan's unlawful retaliatory conduct in violation of Section 1981, Plaintiff James has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

125.     As a direct and proximate result of Defendants Michael Cox, David Booth, Travis Reed Miller, Tanya Nguyen, and Dominique Morgan's unlawful retaliatory conduct in violation of Section 1981, Plaintiff James has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

126.     Defendants Michael Cox, David Booth, Travis Reed Miller, Tanya Nguyen, and Dominique Morgan's unlawful retaliatory conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Plaintiff James, and was done with conscious disregard of Plaintiff James' civil rights, entitling Plaintiff James to an award of punitive damages.

### Count 4 - 42 U.S.C. §1981 - Retaliation)
### (Arlinda(Tray) Johns v. Michael Cox, David Booth (Zephyr Williams), Tanya Nguyen, Travis Reed Miller, and Dominique Morgan))

127.     Defendants Michael Cox, David Booth, Travis Reed Miller, Tanya Nguyen, and Dominique Morgan's have violated §1981 by directly participating in subjecting Plaintiff Johns to retaliation for her protected opposition to the racial targetting, harassment, and discriminatory treatment of Monica James at Black & Pink.

128.     As a direct and proximate result of Defendants Michael Cox, David Booth, Travis Reed Miller, Tanya Nguyen, and Dominique Morgan's unlawful retaliatory conduct in violation of Section 1981, Plaintiff Johns has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

129.     As a direct and proximate result of Defendants Michael Cox, David Booth, Travis Reed Miller, Tanya Nguyen, and Dominique Morgan's unlawful retaliatory conduct in violation of Section 1981, Plaintiff Johns has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

130.     Defendants Michael Cox, David Booth, Travis Reed Miller, Tanya Nguyen, and Dominique Morgan's unlawful retaliatory conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Plaintiff Johns, and was done with conscious disregard of Plaintiff Johns' civil rights, entitling Plaintiff Johns to an award of punitive damages.

### Count 5 - 42 U.S.C. §1981 - Retaliation)
### (Tyrelle Hinson v. Michael Cox, David Booth (Zephyr Williams), Tanya Nguyen, Travis Reed Miller, and Dominique Morgan))

131.     Defendants Michael Cox, David Booth, Travis Reed Miller, Tanya Nguyen, and Dominique Morgan have violated §1981 by subjecting Plaintiff Hinson to retaliation for his protected opposition to Defendants and Black & Pink's discriminatory actions on the basis of race against Plaintiff James and Plaintiff Johns by terminating his employment with Black & Pink.

132.     As a direct and proximate result of Defendants Michael Cox, David Booth, Travis Reed Miller, Tanya Nguyen, and Dominique Morgan's unlawful retaliatory conduct in violation of Section 1981, Plaintiff Hinson has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

133.     As a direct and proximate result of Defendants Michael Cox, David Booth, Travis Reed Miller, Tanya Nguyen, and Dominique Morgan's unlawful retaliatory conduct in violation of Section 1981, Plaintiff Hinson has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

134.     Defendants Michael Cox, David Booth, Travis Reed Miller, Tanya Nguyen, and Dominique Morgan's unlawful retaliatory conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Plaintiff Hinson, and was done with conscious disregard of Plaintiff Hinson's civil rights, entitling Plaintiff Hinson to an award of punitive damages.

**<u>Prayer For Relief</u>**

WHEREFORE, Plaintiff Monica James, Plaintiff Arlinda (Tray) Johns, and Plaintiff Tyrelle Hinson respectfully pray that this Honorable Court:

1.   Issue its declaratory judgment that the actions described herein deprived the Plaintiffs of rights guaranteed to them by 42 U.S.C. §1981;

2.   Enter judgment against Defendants on all counts of the Complaint;

3.   Award Plaintiffs damages in an amount to be determined at trial;

4.   Award Plaintiffs punitive damages as permitted by law, plus its reasonable costs and attorney's fees for this action;

5.   Grant Plaintiffs such other relief as the Court deems necessary and just.

## **<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury of all the claims asserted in this Complaint so triable.

Dated: December 20, 2021                    Respectfully submitted,

/s/ Tanvi K. Sheth

_____
Tanvi Kaushal Sheth
(IL Bar No. 6321509)
55 East Monroe Street, Suite 3800
Chicago, IL 60603
tks@tkshethlaw.com
C: 847.529.8279

Attorney for the Plaintiffs
*(Pending Pro Hac Vice Admittance)*

/s/ Joseph Simons

_____
Joseph Simons, Local Counsel
MA Bar No. 684030
10 Post Office Square Suite 800
Boston, MA 02109
joe@jbsimonslaw.com
617-544-9000