UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MONICA JOSEY JAMES, ARLINDA JOHNS, and TYRELLE HINSON, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 21-cv-12098-AK |
| MICHAEL COX, DOMINIQUE MORGAN, TRAVIS REED MILLER, TANYA NGUYEN, and DAVID BOOTH a/k/a ZEPHYR WILLIAMS, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER**

**A. KELLEY, D.J.**

Plaintiffs Monica Josey James ("James"), Arlinda Johns ("Johns"), and Tyrelle Hinson ("Hinson") bring this suit against Defendants Michael Cox ("Cox"), Dominique Morgan ("Morgan"), Travis Reed Miller ("Miller"), Tanya Nguyen ("Nguyen"), and David Booth, also known as Zephyr Williams ("Booth"), alleging race-based discrimination and retaliation in violation of 42 U.S.C. § 1981. The defendants have moved to dismiss the suit in its entirety. [Dkt. 15]. For the following reasons, the Court **GRANTS** the defendants' motion to dismiss.

I.   **Background**

Unless otherwise noted, the facts are recited as alleged in the complaint. [See Dkt. 1 ("Complaint")]. James, an African-American woman, began working for Black and Pink, a non-profit "queer anarchist organization" encompassing "LGBTQ prisoners and 'free world' allies who support each other through advocacy, education, direct service, and organizing" on March

1

11, 2017. [Id. at ¶¶ 6, 9]. Johns, an African-American woman, became National Director at Black and Pink on August 17, 2017. [Id. at ¶ 7]. Hinson was the Office Manager of Black and Pink. [Id. at ¶ 8]. In June 2017, James began a brief relationship with Frank Place ("Place"), a white male involved in Black and Pink. [Id. at ¶ 33]. Approximately two weeks later, Place attempted to film James performing a sexual act on him without James's consent. [Id. at ¶ 34]. When James discovered the recording, she stopped the act, demanded Place delete any recordings and footage of her, and said she would report Place to the police if he attempted anything similar in the future. [Id.]. This interaction underlies the plaintiffs' claims.

Shortly after James and Place's altercation, Jason Lydon ("Lydon"), James's then-supervisor, approached James and asked her why Place was "not happy" with her. [Id. at ¶ 35]. After James explained what happened with Place, Lydon threatened James's job and told her to apologize to Place. [Id. at ¶ 37]. Lydon then shared information about James's personal affairs with other members of Black and Pink, inciting "violence and hostility against her." [Id. at ¶ 43]. Cox joined Lydon's campaign against James, and, at various points, threatened James's job, described her as "aggressive," and demanded she agree to be recorded during their interactions. [Id. at ¶¶ 46-52]. James complained about Cox's behavior to various people at Black and Pink, and Booth and Morgan initiated an investigation. [Id. at ¶¶ 53, 55]. The investigation concluded in October 2017, and, as part of its resolution, Booth and Morgan requested that James not contact Place and refrain from initiating legal proceedings. [Id. at ¶ 56]. On November 22, 2017, James filed for a harassment prevention order against Place, Cox, Miller, and another Black and Pink member, which Johns signed as a witness. [Id. at ¶ 77].

Johns defended James to others at Black and Pink, including Morgan, and claimed that the defendants were pursuing James because she "spoke out against their white boy" Place. [Id.

2

at ¶ 81]. Johns also spoke out against Black and Pink's management structure, claiming that the defendants acted as de facto "shadow management" of the organization even though they were not registered with the state as board members. [Id. at ¶¶ 58, 62]. When Johns attempted to improve this perceived lapse in legal compliance, the defendants hindered her efforts and curtailed Johns's power as National Director so that they could continue to exercise their influence over Black and Pink. [Id. at ¶¶ 60-62]. On November 17, 2017, the defendants restricted Johns's access to login credentials and canceled contracts Johns had entered into on behalf of Black and Pink. [Id. at ¶¶ 72-73]. Johns then withdrew $50,000 from Black and Pink's bank account. [Id. at ¶ 74]. On November 18, 2017, Lydon and Cox removed Johns as an authorized party on the bank account, and Johns deposited Black and Pink checks in her possession into a bank account not affiliated with the organization. [Id. at ¶76]. James and Johns received emails on December 21, 2017, from Morgan, terminating their employment with Black and Pink. [Id. at ¶¶ 78-79].

Hinson, an African-American man, who had volunteered with Black and Pink since 2008, was unknowingly listed as a board member with voting powers for several years prior to being informed of that status in September 2017. [Id. at ¶¶ 94, 97-98]. He became Office Manager in 2016. [Id. at ¶ 93]. On several occasions, Hinson opposed Lydon's treatment of James after the incident with Place and spoke out against Johns's termination, voicing his belief that the motivations behind these actions were racist. [Id. at ¶¶ 96, 99-101]. Hinson received a termination email from Morgan on January 28, 2017. [Id. at ¶ 103].

On May 20, 2019, the plaintiffs filed a lawsuit against the defendants in this litigation, Black and Pink, and other individuals associated with Black and Pink (including Lydon) in the Northern District of Illinois, asserting claims for hostile work environment and retaliation

pursuant to 42 U.S.C. § 1981 (the "Illinois Suit"). [Id. at 2 n.1]; see generally James v. Lydon, 19-cv-03366 (N.D. Ill.). The defendants named in the suit pending before this Court were dismissed from the Illinois Suit for lack of personal jurisdiction on February 11, 2020. [Complaint at 2 n.1]; see James v. Lydon, 19-cv-03366, 2020 WL 704795 (N.D. Ill. Feb. 11, 2020). The plaintiffs continued to litigate in Illinois. That court then dismissed some of the claims against the remaining defendants, James v. Lydon, 19-cv-03366, 2020 WL 3192286 (N.D. Ill. June 15, 2020), and ultimately granted summary judgment in the defendants' favor, James v. Lydon, 19-cv-03366, 2022 WL 523121 (N.D. Ill. Feb. 22, 2022). The plaintiffs filed the action pending before this Court on December 20, 2021, nearly two years after the defendants here were dismissed from the Illinois Suit.

The plaintiffs bring five claims against the defendants. First, James alleges that the defendants created a hostile work environment because "she is an African American transgender woman and she spoke out against the racially discriminatory culture and practice at Black & Pink" and because she "defended herself against the sexual misconduct committed" by Place ("Count I"). [Complaint at ¶ 106]. Second, Johns claims that the defendants created a hostile work environment because she is "an African American woman" who "spoke out against the racially and legally offensive organization structure of" Black and Pink and the "racial targeting and discriminatory treatment" of James ("Count II"). [Id. at ¶¶ 115, 118]. Third, James avers that the defendants retaliated against her after she opposed the discrimination she faced ("Count III"). [Id. at ¶ 123]. Fourth, Johns alleges the defendants retaliated against her after she spoke out against the "racial targetting [sic], harassment, and discriminatory treatment" of James ("Count IV"). Fifth, Hinson contends the defendants retaliated against him after he opposed

4

their discriminatory treatment of James and Johns ("Count V"). [Id. at ¶ 131]. The defendants have moved to dismiss all five claims.

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements. Id. Factual allegations must be accepted as true, while legal conclusions are not entitled to credit. Id. A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). Dismissal is appropriate when the complaint fails to allege a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)). When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court is generally limited to "the complaint, documents attached to it, and documents expressly incorporated into it," Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71-72 (1st Cir. 2014), though the Court may also consider "official public records," Bingham v. Massachusetts, 616 F.3d 1, 3 n.1 (1st Cir. 2010) (citation omitted) (noting that "earlier judicial opinions addressing prior, related claims" fall under this "narrow exception").

### III. Discussion

The plaintiffs, all of whom are African American, bring their hostile work environment and retaliation claims pursuant to 42 U.S.C. § 1981. Section 1981 provides, in relevant part, that all "persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. The defendants argue that the doctrine of claim preclusion requires dismissal of the suit. The defendants also maintain that the plaintiffs' claims are barred by the statute of limitations or that they otherwise fail to allege facts sufficient to state a claim for relief.

#### A. Claim Preclusion (Counts I-V)

Federal claim preclusion law, which applies when determining the preclusive effect given to a prior federal court judgment, "bars parties from relitigating claims that could have been made in an earlier suit, not just claims that were actually made." Airframe Sys., Inc. v. Raytheon Co., 601 F.3d 9, 14 (1st Cir. 2010); see Kale v. Combined Ins. Co. of Am., 924 F.2d 1161, 1164 (1st Cir. 1991) ("Once there has been an adjudication on the merits, federal law stipulates that all claims which are 'part of the same cause of action' are extinguished, whether or not actually asserted in the original action." (citation omitted)). Claim preclusion generally applies "where there is (1) a prior final judgment on the merits (2) on the same or sufficiently identical claims (3) between the same parties or their privies." TMTV Corp. v. Mass Prods., Inc., 645 F.3d 464, 473 (1st Cir. 2011). Claim preclusion may also apply when a defendant is "closely related to a defendant from the original action" but "was not named in the previous law suit," such as where "alleged conspirators are sued in the first (unsuccessful) action and the remainder in a second suit based on the same allegations." Negrón-Fuentes v. UPS Supply Chain Sol., 532 F.3d 1, 10

6

(1st Cir. 2008).  The plaintiffs concede "that the causes of action arise from a common nucleus of operative facts," and there is no dispute as to the second element of claim preclusion.  [Dkt. 18 at 17].  They instead contend that the dismissal of the defendants here from the Illinois Suit for lack of personal jurisdiction undermines the first and third elements of claim preclusion.  [Id. at 17-18].

Both a dismissal for failure to state a claim and a summary judgment ruling constitute a final judgment on the merits.  Airframe, 601 F.3d at 14; Caballero-Rivera v. Chase Manhattan Bank, N.A., 276 F.3d 85, 87 (1st Cir. 2002).  In the Illinois Suit, the court dismissed James and Johns's retaliation claims for failure to state a claim after they filed a second amended complaint and again after they filed a third amended complaint.  James, 2020 WL 3192286, at *6; James, No. 19-cv-03366 (N.D. Ill. Feb. 22, 2022), Dkt. 114.  The defendants were ultimately granted summary judgment as to the remaining claims—James's hostile work environment claim[1] and Hinson's retaliation claim.  James, 2022 WL 523121, at *4-5.  The allegations in the suit before this Court and the Illinois Suit are nearly identical.  As such, the claims at issue before this Court were dismissed on the merits in the Illinois Suit, which satisfies the first element of claim preclusion.[2]  The dismissal of some defendants due to lack of personal jurisdiction is irrelevant to whether there was a final adjudication on the merits of the claims, as the claims themselves were not dismissed for jurisdictional reasons and the plaintiffs continued to litigate those claims after the defendants' dismissal from the Illinois Suit.

---

[1] James and Johns were originally included in a single count alleging hostile work environment, see James v. Lydon, 19-cv-03366 (N.D. Ill.), Dkt. 32 at ¶¶ 102-14, but dropped Johns from the claims prior to filing the third amended complaint, see id. Dkt. 111 at ¶¶ 109-18.
[2] On June 10, 2022, the Illinois court denied the plaintiffs' motion to amend the judgment or for a new trial.  James v. Lydon, 19-cv-03366 (N.D. Ill.), Dkt. 183; see id. Dkt. 177.

The parties before this Court and in the Illinois Suit are also sufficiently similar to satisfy the third element of the claim preclusion inquiry. The plaintiffs concede that the "causes of action asserted in the earlier and later suits are sufficiently identical or related." [Dkt. 18 at 17]. Because "the issues in [the] separate suits are the same, the fact that the parties are not precisely identical is not necessarily fatal." Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 402 (1940). Claim preclusion applies when the defendants in the second suit are "closely related to a defendant from the original action." Silva v. City of New Bedford, 660 F.3d 76, 80 (1st Cir. 2011) (citation omitted). For example, claim preclusion can apply where "some alleged conspirators" are unsuccessfully sued in one action and "the remainder" are sued later based "on the same allegations." Negrón-Fuentes, 532 F.3d at 10. Such is the case here. The defendants' names appear throughout the plaintiffs' various complaints in the Illinois Suit, and Lydon's name appears more often in the complaint before this Court than any of the named defendants. The action here is based on the same allegations as the claims in the Illinois Suit, and the plaintiffs themselves believed the defendants here to have such "a close and significant relationship with the original defendants" in the Illinois Suit that they originally "named [them] as conspirators in the first proceeding." Andrews-Clarke v. Lucent Techs., Inc., 157 F. Supp. 2d 93, 101 (D. Mass. 2001) (dismissing suit as barred by claim preclusion). The third element of claim preclusion is satisfied.

The defendants' dismissal from the Illinois Suit for lack of personal jurisdiction does not save the plaintiffs. The plaintiffs chose to file their original suit in Illinois and then chose to continue that litigation after more than half of the defendants were dismissed. They could have chosen to file suit in Massachusetts from the beginning. See United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088-89 (1st Cir. 1992) (noting that

"[s]pecific personal jurisdiction may be asserted where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts"); see also Complaint at ¶ 5 (noting that the acts or omissions giving rise to the litigation occurred in Massachusetts). This is not a case in which a party to the original action can show "good reasons to justify a second chance." Andrews-Clarke, 157 F. Supp. 2d at 101 (quoting In re El San Juan Hotel Corp., 841 F.2d 6, 10 (1st Cir. 1988)); see Gonzalez v. Banco Cent. Corp., 27 F.3d 751, 757 (1st Cir. 1994) ("Logic suggests that the doctrine [of claim preclusion] can achieve its goals only if its preclusive effects occasionally can reach persons who, technically, were not parties to the original action. The pitfalls of a more mechanical rule are obvious; making party status a *sine qua non* for the operation of res judicata opens the door to countless varieties of manipulation, including claim-splitting, suits by proxy, and forum-shopping.").

All three elements of claim preclusion are satisfied. The Court therefore grants the defendants' motion, and the suit is dismissed in its entirety. However, even if claim preclusion did not apply, the plaintiffs' claims would not survive dismissal, as explained below.

### B. Statute of Limitations (Counts I-IV)

The defendants argue that Counts I, II, III, and IV, which focus on James and Johns's alleged injuries, are barred by the statute of limitations. Claims brought pursuant to 42 U.S.C. § 1981 are subject to a four-year statute of limitations. Buntin v. City of Bos., 813 F.3d 401, 405 (1st Cir. 2015). The plaintiffs filed this suit on December 20, 2021. [Dkt. 1]. Any conduct that forms the basis of the plaintiffs' hostile work environment and retaliation claims must have accrued on or after December 20, 2017, to be considered timely. A "cause of action for discrimination or retaliation accrues when it has a crystallized and tangible effect on the employee and the employee has notice of both the act and its invidious etiology." Shervin v.

9

Partners Healthcare Sys., Inc., 804 F.3d 23, 33 (1st Cir. 2015). Much of the plaintiffs' pleading focuses on events that occurred from March 2017 through November 2017, though both Johns and James received termination letters from Black and Pink on December 21, 2017. [See Complaint at ¶¶ 30-79, 81-82]. The receipt of these termination letters is the only relevant event that occurred on or after December 20, 2021.[3] The question, then, is whether the official termination letters are sufficient to ground the plaintiff's hostile work environment and retaliation claims within the statute of limitations.

### 1. Hostile Work Environment (Counts I and II)

The acts underlying James and Johns's hostile work environment claims occurred from July 2017 to November 2017. [Complaint at ¶¶ 34-37, 39-61, 68, 69, 71-77, 81-82]. The plaintiffs even admit that the "harassment, racism," and "hostility" against James were "evident" by September 26, 2017 [id. at ¶ 54], and James "filed for a harassment prevention order" against several of the defendants on November 22, 2017, in which she complained of "the harassment and discriminatory environment at Black [and] Pink" [id. at ¶ 77]. Johns similarly felt that the defendants' actions created "an impossible working environment" and "sens[ed] a hostile takeover" by mid-November 2017. [See id. at ¶¶ 70-76]. The defendants' conduct clearly had a tangible effect on James and Johns prior to December 20, 2017, and James and Johns were "convinced from the outset that discrimination and retaliation were at work." Shervin, 804 F.3d at 33. James "repeatedly opposed the culture of white supremacy and race based discrimination practices" at Black and Pink, and Johns similarly voiced concerns about the "racial targeting,

---

[3] Plaintiffs also allege that the defendants sent a "defamatory letter" about the plaintiffs to Black and Pink's subscribers, funders, and other non-profit organizations on January 1, 2018. [Complaint at ¶¶ 87-88]. Because this letter was sent after the plaintiffs' employment with Black and Pink had ended, it cannot serve as the basis for the plaintiffs' hostile work environment and retaliation claims, and the Court therefore does not consider it—or any other alleged acts that occurred after the plaintiffs' employment relationships with Black and Pink ended—when evaluating timeliness.

10

stereotyping, and harassment" of James and the "racially discriminatory scheme of the sham transition of leadership from a white man to a black woman" at Black and Pink during that time. [Id. at ¶¶ 80-82]. James and Johns's knowledge of the allegedly discriminatory and hostile acts, "together with [their] loudly bruited belief" that the defendants' behavior was motivated by racial animus "is all that was needed for [their] cause of action to accrue and the limitations clock to begin to tick" no later than November 18 or 22, 2017, the last relevant dates the plaintiffs provide regarding the defendants' hostile actions. Shervin, 804 F.3d at 34. As such, James and Johns's hostile work environment claims are untimely.

The continuing violation doctrine does not save those claims. Under that doctrine, a "plaintiff may obtain recovery from discriminatory acts that otherwise would be time-barred so long as a related act fell within the limitations period." Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130 (1st Cir. 2009). While a "classic example of a continuing violation is a hostile work environment," id., "not every hostile work environment claim presents a plausible continuing violation," O'Rourke v. City of Providence, 235 F.3d 713, 727 (1st Cir. 2001). The relevant inquiry is whether the plaintiffs "anchored [their] hostile work environment claim by [pleading] that some instance of harassment happened on or after" December 20, 2021. Franchina v. City of Providence, 881 F.3d 32, 47 (1st Cir. 2018). James and Johns describe no specific behavior by the defendants, i.e., a possible anchoring act, that occurred beyond that date other than the termination letters sent on December 21, 2017. As already explained, James and Johns perceived and spoke out against a pattern of discrimination and retaliation well before they received the termination letters. Tellingly, James and Johns omit the termination letters from the list of actions they claim created the hostile work environment [see Dkt. 1 at ¶ 106 (listing eight events that created a hostile work environment for James); id. at ¶ 115 (listing five events that

11

created a hostile work environment for Johns)], and instead raise the letters separately as the basis for their retaliation claims [see id. at ¶¶ 123, 131]. This indicates that they, too, view the termination letters as "a distinct and independent act of discrimination, motivated by a discrete intention to punish a person who has rocked that boat by complaining about an unlawful employment practice," and not as part of the hostile work environment. Noviello v. City of Boston, 398 F.3d 76, 87 (1st Cir. 2005); see Tobin, 553 F.3d at 130 (noting that a termination is a "discrete discriminatory act that . . . does not require repeated conduct to establish an actionable claim" and the continuing violation doctrine "does not apply to 'discrete acts' of alleged discrimination that occur on a 'particular day,' but only to discriminatory conduct that takes place 'over a series of days or perhaps years'" (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002))).

James and Johns have failed to allege that the termination letters are "indeed substantially related to the other conduct, constituting part of the same hostile work environment as the alleged wrongful conduct that preceded it" and instead treat their termination as a separate cause of action.[4] Brader v. Biogen, 983 F.3d 39, 64 (1st Cir. 2020) (citation omitted). Indeed, they bring separate retaliation claims based on their terminations and clearly recognized and objected to a pattern of discrimination and retaliation well before they received their termination letters. [See Dkt. 1 at ¶¶ 123, 127]. As such, the termination letters are insufficient to anchor James and Johns's hostile work environment claims within the statute of limitations. To find otherwise

---

[4] In fact, the plaintiffs previously alleged in the Illinois Suit that the hostile work environment occurred from March 17, 2017, to December 8, 2017, further underscoring that they recognized a pattern of harassment prior to receiving their termination letters and that they considered the termination letters a discrete act. [See Dkt. 16-2 at ¶ 102] ("Defendants violated § 1981 by failing to respond to multiple pleas from Plaintiff James and Plaintiff Johns to address the systematic racial harassment and stereotyping that she was subjected [to], and which created a hostile work environment between March 17, 2017 and December 8, 2107."); see also James, 19-cv-03366 (N.D. Ill.), Dkt. 32.

12

would not align with the purpose of the continuing violation doctrine, which is to ensure that a plaintiff's claims "are not foreclosed in circumstances where a plaintiff needed to see a pattern of mistreatment before becoming aware that earlier individual acts were, indeed, discriminatory." Salcedo v. Town of Dudley, 629 F. Supp. 2d 86, 98 n.8 (D. Mass. 2009) (citing O'Rourke, 235 F.3d at 730). The statute of limitations requires dismissal of Counts I and II.

### 2. Retaliation (Counts III and IV)

James and Johns also claim that the defendants retaliated against them "by terminating [their] employment at Black [and] Pink" [Dkt. 1 at ¶¶ 123, 127], and the defendants argue that these claims, too, are barred by the statute of limitations [Dkt. 16 at 12-16]. Had James and Johns simply alleged that Black and Pink unlawfully terminated them in retaliation on December 21, 2017, the Court's examination of the statute of limitations would be brief and the results clear. Alas, this is not the case. James and Johns made several statements in the Illinois Suit suggesting that their departure from Black and Pink occurred prior to that date, and they have referenced in the complaint or included as exhibits several documents suggesting the same. Because these sources are attached to or referenced in the complaint or are otherwise part of the public record, the Court may consider them when resolving a motion to dismiss. See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (noting that the court can consider documents incorporated into the complaint, official public records, documents central to a plaintiff's claims, and documents sufficiently referred to in the complaint without converting a motion to dismiss into one for summary judgment); Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000) (explaining that "matters of public record" ordinarily include "documents from prior . . . court adjudications").

13

Per her prior representations, James emailed a "notice of resignation" to Black and Pink on December 8, 2017, because she "could no longer bear to [sic] their wrongdoing" and "demanded that a process to separate her brand and name from Black & Pink be undertaken." [Dkt. 16-2 at ¶¶ 5, 83, 88-90; Dkt. 18-1 at ¶¶ 7, 80]; see James, 19-cv-03366 (N.D. Ill.), Dkt. 32 at ¶¶ 5, 83, 88-90, Dkt. 111 at ¶¶ 7, 80.  Johns has acknowledged that she received a request for resignation from the defendants on November 18, 2017.  [Dkt. 1-4 at 8, Dkt. 16-2 at ¶ 71]; see James, 19-cv-03366 (N.D. Ill.), Dkt. 32 at ¶ 71.  Johns has also stated that she was terminated from Black and Pink on December 4, 2017, and publications from Black and Pink suggest that she was suspended with pay on November 20, 2017, and then suspended without pay on December 4, 2017.  [Dkt. 1-4 at 8; Dkt. 16-2 at ¶ 76; Dkt. 18-1 at ¶ 79]; see James, 19-cv-03366 (N.D. Ill.), Dkt. 32 at ¶ 76, Dkt. 111 at ¶ 79.  Although James and Johns omit these allegations from the complaint before this Court, the Court cannot ignore these contradictory statements.  See Fletcher v. Jones, 105 F.2d 58, 61 (D.C. Cir. 1939) ("Moreover, the truth of the allegations in the bill was not admitted by the motion to dismiss in this case because they were in conflict with facts judicially known to the court."); LoCicero v. Leslie, 948 F. Supp. 10, 12 (D. Mass. 1996) (finding that a transcript from a state court action submitted as an exhibit to a motion to dismiss "clearly" contradicted the plaintiff's claim regarding accrual of the cause of action and noting that "[i]f this Court were to ignore the transcript, it would diminish the value and significance of the prior judicial proceedings"); see also Wright & Miller, Federal Practice and Procedure § 1363 (3d ed. 1998) (collecting cases) ("The district court will not accept as true pleading allegations that are contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or incorporated in the pleading.").  The question, then, is whether James and Johns's retaliation claims accrued on December 8, 2017, when James sent her

14

"notice of resignation," and on November 18, 2017, November 20, 2017, or December 4, 2017, when Johns was asked to resign, suspended with pay, and suspended without pay, rather than on December 21, 2017, when official termination letters were sent.  If they did accrue on those earlier dates, Counts III and IV are untimely.

Shervin v. Partners Healthcare System, Inc. is instructive here.  804 F.3d 23 (1st Cir. 2015).  In Shervin, the plaintiff, a medical resident, brought discrimination and retaliation claims against several hospitals and doctors.  Id. at 30.  The court held that her claims accrued when she was placed on probation in 2007, making them untimely, though the plaintiff argued that they did not accrue until the probation hindered her ability to obtain a medical license in the summer of 2008.  Id. at 33.  The First Circuit noted that the plaintiff "was convinced from the outset that discrimination and retaliation were at work," and the probation decision had a "crystallized and tangible effect on" the plaintiff because she was told "her probation was unconditional and instantly resulted in the imposition of a series of burdensome conditions" that were "an ugly blot on an otherwise glittering record of accomplishment" and "something to be taken quite seriously."  Id.  Indeed, the plaintiff "fought so hard to reverse or expunge" the probation because of its grave effect on her.  Id.  Johns's retaliation claim similarly accrued prior to receipt of her termination letter.  The request for her resignation and the resulting suspensions had "immediate, tangible effects" on Johns and, "together with her loudly bruited belief" that the defendants were retaliating against her, were "all that was needed for her cause of action to accrue and the limitations clock to begin to tick."  Id. at 34; see also Alston v. Town of Brookline, 308 F. Supp. 3d 509, 554 (D. Mass. 2018) ("One could say that the alleged unlawful acts of the [defendant] 'crystallized' and had a 'tangible effect' on [the plaintiff] . . . when the Board suspended [the plaintiff] without pay." (quoting Shervin, 804 F.3d at 33)); Awadh v.

15

Tourneau, Inc., No. 15-cv-13993, 2018 WL 1318921, at *4 (D. Mass. Mar. 14, 2018) ("Here, [the plaintiff] learned he would not be rehired in January 2010 in unequivocal terms.  His later receipt of these [discharge] documents in 2015 do[es] not alter the alleged injury he was already well aware he had suffered and he already had asserted that such injury was the result of discrimination on [the defendant's] part, namely in the [state administrative] charge he filed long before 2015.").  Moreover, Johns herself believed she was terminated on December 4, 2017, which is what she previously alleged.  [See Dkt. 18-1 at ¶ 79].  She now changes her story in an attempt to bring her claim within the statute of limitations.  The Court will not allow it.

James's retaliation claim should be dismissed for a far simpler reason.  James submitted a notice of resignation on December 8, 2017.  [E.g., Dkt. 18-1 at ¶¶ 7, 80]; see James, 19-cv-03366 (N.D. Ill.), Dkt. 111 at ¶¶ 7, 80.  She does not allege that she continued to work for Black and Pink, nor that the defendants took any further actions against her from then until the receipt of the termination letter.  James cannot resign from a position and then claim that her employer retaliated against her by terminating her—it is one or the other.  That Black and Pink later sent an official notice of termination does not undermine James's initial resignation.  See, e.g., Awadh, 2018 WL 1318921, at *4.  Neither James nor Johns can omit facts from the complaint here in an attempt to have a second bite at the apple.  The statute of limitations requires dismissal of Counts III and IV.[5]

---

[5] Although the Court need not address the sufficiency of the pleadings generally, as the doctrine of claim preclusion and the statute of limitations dictate dismissal of Counts I-IV, it notes that the majority of James and Johns's allegations focus on Lydon's actions.  Little is alleged regarding the defendants here, with the possible exception of Cox.  See Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 594-95 (1st Cir. 2011) ("[A]n adequate complaint must include not only a plausible claim but also a plausible defendant.  Yet there is nothing in the complaint beyond raw speculation to suggest that *the named defendants* participated—either as perpetrators or accomplices—in the [alleged injustice].").

### C. Failure to State a Claim (Count V)

The plaintiffs claim that the defendants retaliated against Hinson by terminating his employment at Black and Pink when he opposed the defendants' treatment of James and Johns. The defendants argue that the plaintiffs have failed to state a prima facie claim of retaliation. To establish a prima facie claim of retaliation, a plaintiff must show that (1) he "engaged in protected conduct"; (2) he was "subjected to an adverse employment action"; and (3) that the adverse action is "causally linked to the protected conduct." Hernández v. Wilkinson, 986 F.3d 98, 102 (1st Cir. 2021) (quoting Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 94 (1st Cir. 2018)). While Hinson alleges that he voiced his objections to the defendants' treatment of James and Johns and that he was eventually terminated from Black and Pink, he does not state any facts connecting his termination to those protestations, nor does he allege the defendants were the ones to decide to terminate him. [Dkt. 1 at ¶¶ 92-104]. As such, the plaintiffs have failed to state a causal connection, and Count V does not survive dismissal.

## IV. Conclusion

For the foregoing reasons, the defendants' motion to dismiss [Dkt. 15] is **GRANTED**.

**SO ORDERED.**

Dated: July 22, 2022 /s/ Angel Kelley  
Hon. Angel Kelley  
United States District Judge